UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIANNA KHUN, on behalf of herself and all others similarly situated, | |
| Plaintiff | **Case No. 1:17-cv-10110** |
| v. | |
| SLEEPY'S, LLC and CMC ACQUISITION CORPORATION, d/b/a CAPITOL MARKETING CONCEPTS, INC., | |
| Defendants. | |

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, Dianna Khun ("Plaintiff" or "Khun"), by and through her counsel, hereby respectfully moves the Court for approval of this Motion for Preliminary Approval of Class Action Settlement ("Motion for Preliminary Approval").  Specifically, Plaintiff respectfully requests that the Court enter an Order:

1) Provisionally certifying the proposed settlement classes under Rule 23 of the Federal Rules of Civil Procedure in connection with the settlement process, as outlined in the exhibits hereto and below;

2) Granting preliminary approval of the Settlement Agreement, Release, and Waiver ("Settlement Agreement"), <u>attached as Exhibit A hereto</u>;

3) Appointing Forrest, LaMothe, Mazow, McCullough, Yasi & Yasi, P.C. as Class Counsel;

4) Directing distribution of the proposed Notice(s) of Settlement of Class Action Lawsuit and Fairness Hearing ("Notice"), attached as Exhibit A  and Exhibit B to the Settlement Agreement, in accordance with this Motion for Preliminary Approval;

5) Approving KCC LLC as the Settlement Administrator; and

6) Setting the final fairness hearing for a date no later than one hundred and twenty (120) days after the date of the entry of the Preliminary Approval Order.

1

In support of her Motion for Preliminary Approval, Plaintiff submits the following incorporated memorandum.

## I.   INTRODUCTION AND PROCEDURAL HISTORY

Dianna Khun filed this putative class action on November 7, 2016 in the Suffolk County Superior Court, Massachusetts against Defendants, Sleepy's LLC ("Sleepy's") and CMC Acquisition Corporation d/b/a Capitol Marketing Concepts, Inc. ("Capitol") (collectively "Defendants") (Khun, Sleepy's and Capitol are collectively referred to herein as the "Parties").

On or about November 1, 2016, and pursuant to M.G.L. c. 93A, Khun served both Defendants with class-wide consumer protection demands.

Thereafter, on or about December 12, 2016, Plaintiff filed a First Amended Class Action Complaint and Demand for Jury Trial with added claims for purported violations of M.G.L. c. 93A.

On or about January 23, 2017, Defendant, Sleepy's LLC, removed this case to the United States District Court for the District of Massachusetts.  Thereafter, both Defendants filed their respective answers and affirmative defenses to Khun's First Amended Class Action Complaint on January 30, 2017.

On April 3, 2017, the Parties appeared for the Rule 16 and Rule 26 Joint Scheduling Conference and filed their associated statements.  Following the conference, the Parties agreed to and executed a joint motion for entry of protective order.

On June 16, 2017, the Parties appeared for a status conference.  At the conference, the Parties reported that they had reached an agreement to proceed to private mediation.

Thereafter, on September 27, 2017, the Parties engaged Eric D. Greene, Esq. of Resolutions, LLC and held a full-day private mediation session.  However, at the time of the mediation the Parties were not able to fully resolve the alleged claims.

2

On October 11, 2017, the Parties appeared for a further status conference and proposed an amended scheduling order.

Thereafter, on January 11, 2018, the Parties appeared for a further status conference and discussed the Parties' amended scheduling order.  Said amended scheduling order was entered by this Court on January 11, 2018.

On March 26, 2018, the Parties appeared for a further status conference and reported to the Court that they had reached an agreement on general terms of a class-wide settlement.  The Parties reported that there was a need for a brief confirmatory discovery process and requested a further status conference date.

Thereafter, on May 4, 2018, the parties appeared before this Court with confirmation of settlement.

The Court set the matter on for hearing June 20, 2018.

The Parties now hereby jointly move for preliminary approval of this class action settlement, which has been reached after extensive arms-length and good faith negotiations.  The Parties contend the settlement will provide a fair and reasonable recovery to members of the putative class.

Moreover, the Parties represent that since the filing of this lawsuit, they have voluntarily exchanged extensive information, including records related to putative class size and information.

The Parties' negotiations resulted in an agreement to settle the action on the terms set forth in the Settlement Agreement, attached hereto as Exhibit A.

The terms of the settlement are presumptively fair and well within the range of reasonableness for class and collective action settlements of this kind and are the product of arm's-length negotiations.

## II.    SUMMARY OF CLAIMS AND DEFENSES

Khun alleges that Sleepy's and Capitol have engaged in an unlawful scheme whereby Defendants advertised and made certain representations to Massachusetts consumers who bought certain qualifying Sleepy's products. More precisely, the Plaintiff alleged Defendants represented that Massachusetts customers would be entitled to a promotional gift card of varying yet significant value; however, Plaintiff alleges that such representations failed to clearly and conspicuously disclose certain terms, conditions and restrictions related to the promotional gift cards redemption and use.

That is, Khun alleges that despite Defendants' advertising and representations to consumers at large, Sleepy's and Capitol failed to disclose all of the relevant material conditions, limitations and restrictions associated with the use and redemption of the promotional gift cards (in violation of federal regulation and Massachusetts statutory and regulatory law). As such, Khun alleges Defendants' acts and omissions constituted purported violations of Massachusetts General Law chapter 93A, § 2; Massachusetts regulation 940 CMR 6.05 (retail adverting regulation); Massachusetts regulation 940 CMR 3.02 (Massachusetts false advertising regulation); Massachusetts regulation 940 CMR 3.05 (General Misrepresentations); Massachusetts regulation 940 CMR 3.16 (violation of consumer regulations); and 12 CFR 205.20 (Federal gift card regulation). Further, Khun alleges claims of breach of contract; negligent misrepresentation; fraud and deceit; and unjust enrichment.

Finally, Khun seeks declaratory relief with regard to the acts and practices of Defendants as set forth in her First Amended Complaint.

Sleepy's denies it engaged in any unfair, illegal or deceptive act and maintains that Sleepy's promotional card campaign was legal and proper.  Sleepy's contends that it informed all customers who qualified for the promotion that terms and conditions apply.  Sleepy's asserts that its actions complied with all state and national statutes and that each customer who qualified for a promotional gift card was sent a packet to the address provided for delivery and each packet contained all terms and conditions of the promotional gift card in clear and conspicuous language.

Likewise, Capitol denies violating any state or federal statutes as alleged in Plaintiff's First Amended Complaint. Capitol contends that in connection with the promotion under which Plaintiff alleges she was entitled to promotional gift cards, Capitol's role was solely limited to providing vouchers for promotional gift cards to Sleepy's customers. Capitol maintains that it had no involvement in any advertising for the promotion offered by Sleepy's, had no involvement in determining who was eligible for the promotional gift card, and had no communications with any of Sleepy's customers until after a qualifying purchase was made.

III.   **SUMMARY OF THE TERMS OF THE SETTLEMENT AND RELIEF SOUGHT**

The Settlement Agreement defines the Settlement Class into two subclasses.

The first subclass ("Subclass A") consists of all persons in Massachusetts who were issued promotional gift card vouchers and who redeemed said promotional gift card.

The second subclass ("Subclass B") consists of all person in Massachusetts who were issued promotional gift card vouchers but who did not redeem said voucher.

As part of the settlement of the claims, the Parties have agreed that Subclass A shall receive $25.00 in statutory damages per promotional gift card voucher, and Subclass B shall receive the actual value of the promotional gift card voucher to which they were allegedly entitled.

| Class | Number of Promotional Gift Card Vouchers Issued | Settlement Relief per Promotional Gift Card Voucher | Total Settlement Relief |
|---|---|---|---|
| Subclass A | 5,283 | $25.00 | $132,075.00 |
| Subclass B | 1,870 | $110.33 | $206,325.00 |
| | | **Total:** | **$338,400.00** |

Defendants have further agreed to cover all costs associated with administration of the settlement including providing notice to settlement class members and issuing settlement checks.

In addition, Defendants have agreed to make a one-time service payment to the named Plaintiff in an amount not to exceed $6,300.

Finally, the Defendants have agreed to pay the court approved amount of attorneys' fees and costs to Class Counsel separate and apart from the class member settlement relief, in an amount not to exceed $250,000.00.

The settlement provides that each individual who is a member of one of the subclasses shall be sent a Notice and will be notified of their opportunity to exclude themselves from said settlement and/or object to said settlement.

Defendants, through the Settlement Administrator, will make all reasonable efforts to best ensure that each potential class member receives full and adequate notice of the settlement, which shall set forth the material settlement terms; instructions on how to submit objections to the settlement and when and where to appear at the final fairness hearing; and how to request exclusion from the settlement. See, proposed Notices attached to the Settlement Agreement as Exhibit A (Postcard Notice) and Exhibit B (Long Form Notice).

Upon final approval, Defendants' Counsel will ensure distribution of the settlement funds to the class.

The Parties propose that, along with granting preliminarily approval of the settlement, the Court adopt the schedule set forth below, for the parties to effectuate the various steps in the settlement approval process under the Settlement Agreement:

| | *Event* | *Timing* |
|---|---|---|
| 1 | Notice Date | No more than thirty (30) days after the entry of Order preliminarily approving the settlement. |
| 2 | Deadline for filing Objections | Seventy-five (75) days after the entry of the Order preliminarily approving the settlement. |
| 3 | Deadline for filing Requests for Exclusion | Seventh five (75) days after the entry of the preliminarily approving the settlement. |
| 3 | Final Approval Hearing Date | One Hundred and Twenty (120) days after the entry of the Order preliminarily approving the settlement. |

Accordingly, at this preliminary stage of the settlement process, Plaintiff respectfully requests that the Court enter an Order: (1) provisionally certifying the proposed Settlement Class under Rule 23 of the Federal Rules of Civil Procedure with respect to the claims brought against Defendants; (2) granting preliminary approval of the Settlement Agreement; (3) appointing Forrest, LaMothe, Mazow, McCullough, Yasi & Yasi, P.C. as Class Counsel; (4) directing distribution of the proposed Postcard Notice to all class members in accordance with the terms of the Settlement Agreement; approving KCC LLC as the Settlement Administrator; and (5) setting the final fairness hearing for one hundred and twenty (120) days after the entry of the Order preliminarily approving the settlement.

Plaintiff submits that the proposed Settlement Agreement satisfies all the criteria for preliminary settlement approval under federal and state law and falls well within the range of possible approval.  Accordingly, Plaintiff requests that the Court grant the requested relief.

**IV.**     <u>**Legal Argument**</u>

    **A.**     **Standard of Review and Procedures for Preliminary Approval.**

By this Motion for Preliminary Approval, the Parties seek preliminary approval of the Settlement Agreement.  "Compromises of disputed claims are favored by the courts."  <u>Williams v. First Nat'l Bank</u>, 216 U.S. 582, 595 (1910); <u>see</u> <u>also</u>, <u>Durett v. Housing Auth. of Providence</u>, 896 F.2d 600, 604 (1st Cir. 1990); <u>In re Viatron Computer Sys. Corp.</u>, 614 F.2d 11, 15 (1st Cir. 1980); and <u>In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions</u>, 148 F.3d 283, 317 (3d Cir. 1998) ("Prudential II").

Settlement spares the litigants the uncertainty, delay and expense of a trial, while simultaneously reducing the burden on judicial resources.  Federal Rule 23(e) provides that the Court must approve any settlement of a class action.

In a class action, the "court plays the important role of protector of the [absent members'] interests, in a sort of fiduciary capacity."  <u>In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.</u>, 55 F.3d 768, 785 (3rd Cir. 1995) ("GM Trucks").  The ultimate determination. The ultimate determination though of whether a proposed class action settlement warrants approval resides in the Court's discretion.  <u>Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson</u>, 390 U.S. 414, 424-25 (1968).

As discussed more fully below, at this stage of preliminary approval, there is clear evidence that the Settlement Agreement is a benefit to the putative Settlement Class, particularly given the evidentiary and legal issues discussed below and the full statutory amount agreed to that is well within the range of possible approval and thus should be preliminarily approved.

Rule 23(e) of the Federal Rules of Civil Procedure provides the mechanism for settling a class action, including, as here, through a class certified for settlement purposes:

The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed,

or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>
> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
>
> (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
>
> (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
>
> (5) Any class member may object to the proposal if it requires court approval under Federal Rule of Civil Procedure 26(e); the objection may be withdrawn only with the court's approval.

FED. R. CIV. P. 23(e); see also, Amchem Prods. v. Windsor, 521 U.S. 591, 617 (1997); and Durett, 896 F.2d at 604.

In determining whether preliminary approval is warranted, the primary issue before the Court is whether the proposed settlement is within the range of what might be found fair, reasonable and adequate, so that notice of the proposed settlement should be given to class members, and a hearing scheduled to determine final approval.  See, Manual for Complex Litigation, Fourth, § 13.14, at 172-73 (2004) ("Manual Fourth"). The Court reviews the settlement proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. Id.

If so, the final decision on approval is made after the hearing. At the hearing on this Motion for Preliminary Approval, the Court is not required to make a final determination. Instead:

> The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

Id. at § 21.632, at 321.   Preliminary approval is the first step in a two-step process required before a class action may be finally settled.   Id. at 320.   At step one, courts make a preliminary evaluation of the fairness of the settlement, prior to notice.   Id. at 320-21.   In some cases, this initial assessment can be made on the basis of information already known to the court and then supplemented by briefs, motions and an informal presentation from the settling parties. Id. There is an initial strong presumption that a proposed class action settlement is fair and reasonable when it is the result of arm's length negotiations.   Durett, 896 F.2d at 604 (reversing denial of approval of settlement as an abuse of discretion and noting that "district court's discretion [in denying approval of settlements] is restrained by 'the clear policy in favor of encouraging settlements'").

In deciding whether a settlement should be approved under Rule 23, courts look to whether there is a basis to believe that the more rigorous, final approval standard will be satisfied.   "Once the judge is satisfied as to the certifiability of the class and the results of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members."   MANUAL FOURTH at § 21.633, at 321.   Preliminary approval permits notice of the hearing on final settlement approval to be given to the class members, at which time class members and the settling parties may be heard with respect to final approval.   Id. at 322.   The standard for final approval of a settlement consists of showing that the settlement is fair, reasonable, and adequate.   See e.g., Durett, 896 F.2d at 604; Prudential II, 148 F.3d at 316-17; In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 785 (3rd Cir. 1995) ("GM Trucks").

1.    **The Settlement Agreement reached in this case is fair, reasonable and adequate.**

Before granting approval of a proposed class action settlement, the Court must find that the settlement is fair, reasonable, and adequate.  See e.g., FED. R. CIV. P. 23(e); MASS. R. CIV. P. 23(c); Durett, 896 F.2d at 604; and Sniffin v. Prudential Ins. Corp., 395 Mass. 415 (1985).

A "strong initial presumption" of fairness arises where the parties can show that "the settlement was reached after arms-length negotiations, that the proponents' attorneys have experience in similar cases, that there has been sufficient discovery to enable counsel to act intelligently, and that the number of objectors or their relative interest is small."  Rolland v. Cellucci, 191 F.R.D. 3, 6 (D. Mass. 2000); see also, City P'ship Co. v. Atlantic Acquisition Ltd. P'ship, 100 F. 3d 1041, 1043 (1st Cir. 1996).

"[T]here is no single test in the First Circuit for determining the fairness, reasonableness and adequacy of a proposed class action settlement."  In re Relafen Antitrust Litig., 231 F.R.D. 52, 71-72 (D. Mass. 2005) (internal quotations omitted).

As a result, the courts of the First Circuit rely on a number of factors, the most common of which include:  (1) the complexity, expense, and duration of litigation, if the agreement is denied; (2) the amount of the proposed settlement compared to the amount at issue; (3) reaction of the class to the settlement; (4) the stage of proceedings and the amount of discovery completed; (5) the plaintiffs' likelihood of success on the merits and recovering damages on their claims; (6) whether the agreement provides benefits which the plaintiffs could not achieve through protracted litigation; (7) good faith dealings and the absence of collusion; and (8) the settlement's terms and conditions.  See, e.g., Rolland v. Patrick, 562 F. Supp. 2d 176 (D. Mass. 2008); In re Relafen Antitrust Litig., 231 F.R.D. at 72; In re Lupron Mktg. & Sales Practices

Litig., 228 F.R.D. 75, 93 (D. Mass. 2005); Celluci, 191 F.R.D. at 8-9; and M. Berenson Co. v.

Faneuil Hall Marketplace, Inc., 671 F. Supp. 819, 822-833 (D. Mass. 1987).

      In the case at bar, an examination of each of these factors demonstrates that the proposed

settlement is fair, reasonable, and adequate to the members of the class, and should be

preliminarily approved by the Court.

      First, with respect to complexity, expense, and duration of litigation, it is clear that the

prosecution of this case would be lengthy and expensive.  If this settlement is not approved, the

Parties could face extended and expensive litigation regarding both the certifiability of the two

proposed subclasses and the merits of whether the promotional gift card voucher program

violated any state or federal laws, including M.G.L. c. 93A.

      In addition, the Parties would have to conduct costly and extensive additional discovery

in preparation for trial and would potentially face a lengthy and costly class action trial.  Further,

if this case does not settle, it would likely take years to resolve, generating enormous legal fees

before reaching final resolution, including exhaustion of all appeals.

      Second, with respect to the amount of the proposed settlement compared to the amount at

issue, the Parties agree that the value of the settlement is fair and reasonable given the various

challenges facing the parties.  That is, the terms of the settlement entitle all class members who

were able to redeem their promotional gift card vouchers $25.00, which amount represents the

**full statutory award** **said class member would be entitled to pursuant to M.G.L. c. 93A.** In

addition, the terms of the settlement entitle all class members who were unable to redeem their

promotional gift card vouchers the **full** **amount of the unredeemed value of the promotional**

**gift card promised.**

Further, given the very real risk that Plaintiff and the putative class could recover nothing if this litigation were to proceed, the Parties agree that this settlement amount is entirely appropriate and very favorable to the Plaintiff and the putative class members.

Third, with respect to the reaction of the class to the settlement, the Court will be able to evaluate this factor after the notice period has expired and all potential objections and/or opt-outs have been analyzed.

Fourth, with respect to the stage of proceedings and the amount of discovery completed, Class Counsel received all requested information they determined necessary in order to estimate the aggregate class damages for all claims in the case in relation to the agreed upon terms of the Settlement Agreement, thus allowing them to assess the fairness of the settlement.

Further, the Parties have engaged in extensive arm's-length discussions about the relevant facts and legal merits of the claims asserted in the case. These discussions have focused on a number of practical and legal issues presented by this case, and this settlement will resolve the risks which the Parties fully appreciate at this point in the litigation.

Fifth, with respect to the Plaintiff's likelihood of success in obtaining class certification and in recovering on the merits of the case, Plaintiff believes strongly in her case, but recognizes that the agreed upon settlement figures are possibly the maximum amount the classes might be able to recover and there is the possibility that should the matter proceed to trial the class members may receive significantly less than the agreed to amounts or could receive nothing. Finally, Plaintiff recognizes that surviving summary judgment is not guaranteed nor is avoiding a significant reduction in available damages to each settlement class member.

Sixth, with respect to whether the agreement provides benefits which Plaintiff could not achieve through protracted litigation, the settlement provides the benefit of a prompt and fair

resolution to all claims in the Amended Complaint, and the avoidance of delay of the class members' receiving their portion of the settlement amount.

Seventh, with respect to whether the settlement was reached as the result of good faith dealings and the absence of collusion, the Parties submit that the settlement was the result of good faith negotiations and involved no collusion. Both Plaintiff and Defendants are represented by experienced counsel in consumer protection litigation, who have litigated similar cases aggressively and successfully on behalf of their respective clients. The settlement was negotiated on behalf of Plaintiff by a team of attorneys who have successfully represented numerous class representatives and putative classes in class action litigation, including other court approved settlements of consumer protection class actions.[1]  See, e.g., Cotton v. Hinton, 559 F.2d 1326 (5th Cir. 1977); In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions, 410 F.Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); Fisher Brothers v. Phelps Dodge Industries, Inc., 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

---

[1] See e.g., Doe et al., v. The Medical Treatment Center of Revere, et al., CA No. SUCV-2014-3487A (Allowed May 15, 2018, Campo, J.); Butler et al. v. Salisbury Five C's, Inc., et al., CA No. ESCV-1777-CV-1127C (Allowed April 17, 2018, Lu, J.); Topham et al. v. Roberts Towing, Inc. d/b/a Roberts Towing, CA No. SUCV-2017-0386-BLS1 (Allowed February 21, 2018, Kaplan, J.); Cabrera v. Progressive Direct Ins. Co., CA No. SUCV-2016-03716-BLS2 (Allowed February 14, 2018, Salinger, J.); Polanik et al. v. Boston Hill Donuts, LLC, et al., CA No. 1784CV00914-BLS2 (Allowed, September 28, 2017, Leibensperger, J.); Hyman et al. v. Metropolitan Property & Casualty Ins. Co., et al.,  CA No. SUCV-1684CV00488-BLS2 (Allowed, August 23, 2017, Sanders, J.); Kappotis et al. v. Bertucci's, Inc. et al., CA No. SUCV-1584CV03821-BLS1 (Allowed, February 24, 2017, Kaplan, J.); Reis et al. v. Knight's Airport Limousine Service, Inc., et al., CA No. WOCV2014-01558C (Allowed, November 10, 2015); Fama et al. v. Bactes Imaging Solutions, Inc., Suffolk Superior Court, C.A. No.: 13-01435-BLS1, consolidated with 13-00681-BLS1; 13-04165-BLS1; and 14-00352-BLS1 (Allowed, May 4, 2015, Kaplan, J.); Figueroa, et al.   v. Plymouth Rock Assurance Corp., CA No.: 13-1829 BLS-2 (Allowed, June 14, 2014, Roach, J.); Duran v. Liberty Mutual Ins. Co., CA No. 12-0367 (Allowed, September 23, 2014, Billings, J.); Flores, et al. v. Government Employees Ins. Co., Suffolk Superior Court C.A. No.: 13-2125A (Allowed, December 17, 2014, Billings, J.); and Garian, et al. v. Metropolitan Prop. & Cas. Ins. Co., C.A. No. 12-1465 (Allowed, September 27, 2013, Welch, J.).
.

This settlement was specifically negotiated by experienced counsel to assure all class members their rights under the applicable laws, and was not the product of collusive dealings, but, rather, was informed by the vigorous prosecution of the case by experienced and qualified counsel.  Further, continued litigation would be long, complex and expensive, and a burden to court dockets.[2]

As stated, the proposed Settlement Agreement was the result of protracted, good faith, arm's length negotiations between experienced and informed counsel on both sides, and the Settlement Agreement and its material terms were negotiated among counsel upon the review of extensive records and after a full day of in person mediation as well as many telephone conferences to negotiate the proposed Settlement Agreement. The $338,400.00 Common Fund amount is a substantial result for the affected settlement class.

The result is well within the reasonable standard.  Plaintiff's counsel also believes that the result is appropriate when considering the difficulty and risks involved in litigating class claims as to the alleged consumer protection issues related to the promotional gift card voucher programs.

Accordingly, the standards for preliminary approval are met in this case and the parties request the Court grant preliminary approval.

---

[2] Litigating Plaintiff's claims would require substantial additional preparation and discovery.  It ultimately would involve the deposition and presentation of numerous witnesses; the consideration, preparation and presentation of documentary evidence; and the preparation and analysis of expert reports and oppositions to such reports.  In addition, because Defendants deny that any violations of law have occurred, Defendants would possibly appeal any adverse ruling. Similarly, Plaintiff would possibly appeal any adverse ruling. In contrast, the Settlement Agreement will yield a prompt, certain, and very substantial recovery for the class.  Such a result will benefit the Parties and the court system.  Certainly, putting the matter out for notice in order to determine the reaction of the classes as a whole is warranted.

### B.      Provisional Certification of the Settlement Classes is Appropriate.

Both the Supreme Court and various circuit courts have recognized that the benefits of a proposed settlement can only be realized through the certification of a settlement class. See e.g., Amchem, 521 U.S. at 591; In re Lupron Marketing and Sales Practices Litigation, 345 F. Supp. 2d 135, 137 (D. Mass. 2004) (citing MANUAL FOURTH); see also, Hanlon v. Chrysler Corp., 150 F.3d 1011 (9th Cir. 1998); and Prudential II, 148 F.3d at 283.

Specifically, the First Circuit has established that where there is a "common disputed issue," courts should "view the issue . . . in favor of class action status."  Tardiff v. Knox County, 365 F.3d 1, 5 (1st Cir. 2004); see also, In re New Motor Vehicles Canadian Export Antitrust Litigation, 522 F.3d 6, 23 (1st Cir. 2008) (noting "existence of a common disputed issue weighs in favor of class certification, not against it).  This is also the preference in other circuits.  See e.g., Eisenberg v. Gagnon, 766 F.2d 770 (3d Cir.1985) ("[t]he interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action").  Here, as set forth below, all the elements of Rule 23 are met with respect to the proposed settlement, which, accordingly, merits class certification.

### 1.      The Elements of Rule 23(a) are Satisfied in the Present Case.

In order for a lawsuit to be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, a named plaintiff must establish each of the four threshold requirements of subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R Civ. P. 23(a). See e.g., Key v. Gillette Co., 782 F.2d 5, 7 (1st Cir. 1986) ("all four requirements of Rule 23(a) must be met in order for certification of a class to be proper"); Barnes v. American Tobacco Co., 161 F.3d 127 (3d Cir. 1998); Prudential II, 148 F.3d at 308-09. Here, for purposes of settlement, all four elements are easily satisfied.  Specifically, the proposed settlement class consists of the following subclasses:

      a.    **Subclass A** – all persons who made a qualifying promotional purchase during the class period at a Sleepy's retail location in Massachusetts, or an online purchase for a Massachusetts delivery, who were entitled to a promotional gift card, were issued a voucher, and who redeemed said voucher.

      b.    **Subclass B** – all persons who made a qualifying promotional purchase during the class period at a Sleepy's retail location in Massachusetts, or an online purchase for a Massachusetts delivery, who were entitled to a promotional gift card, were issued a voucher, but who did not redeem said voucher.

### 2.      The Requirements of Numerosity Are Met Under Rule 23(a)(1).

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Plaintiff is not required to come before the Court and detail, to the person, the exact size of the class or to demonstrate that joinder of all class members is impossible. "'Impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class."  Advertising Special. Nat. Ass'n v. Federal Trade Comm'n, 238 F.2d 108, 119 (1st Cir. 1956) (citing 3 MOORE'S FEDERAL PRACTICE 3423 (2d ed. 1948).; see also Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp., 149 F.RD. 65, 73 (D.N.J. 1993) (stating that "[i]mpracticability does not mean impossibility" and "precise enumeration of the members of a class is not necessary").  Furthermore, "numbers alone" are not determinative of numerosity, but rather, "the facts and circumstances of each case are to be taken into account to determine numerosity under Rule 23(a)(1)." Andrews v. Bechtel Power Corp., 780 F.2d 124, 131-32 (1st Cir. 1985).

For settlement purposes numerosity is achieved here because Subclass A consists of 5,283 members and Subclass B consists of 1,870 members.  Further, it is not practicable for all members of the putative class to be joined in this action given their varying geographic locations throughout Massachusetts.

### 3.     The Requirements of Commonality Are Met Under Rule 23(a)(2).

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  The commonality requirement is met if the plaintiff's grievances demonstrate "that there are common questions of law or fact in the case."  So. States Police Benevolent Ass'n, Inc. v. First Choice Armor & Equip., Inc., 241 F.R.D. 85, 87 (D. Mass. 2007) (characterizing commonality requirement as a "low hurdle" that "can be met by even a single common legal or factual issue").[3]

Here, for settlement purposes commonality is met insofar as the claims of the class representative and all class members are all predicated on the core common issue as to whether Defendants' promotional gift card voucher program violated the Massachusetts consumer protection laws and/or failed to clearly and conspicuously disclose the relevant terms and conditions of redemption and use.  See e.g., Overka v. Am. Airlines, Inc., 265 F.R.D. 14, 18 (D.

---

[3] Rather than requiring that all questions of law or fact be common, Rule 23 only requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3).  Plaintiff is not required to show that all class members' claims are identical to each other as long as there are common questions at the heart of the case; "despite some factual differences between the members of the class, commonality can still exist for purposes of 23(a)(2)."  In re Dehon, Inc., 298 B.R. 206, 214 (Bankr. D. Mass. 2003) (holding that because one "can reasonably infer that certain defenses of the individual members of the putative class to Dehon's subordination strategy will be available to every other member…is established").

Indeed, only a single common question is sufficient to satisfy the requirements of Rule 23(a)(2).  See, e.g., 1 Robert Newberg, NEWBERG ON CLASS ACTIONS, § 3.10; accord So. States Police Benevolent Ass'n, 241 F.R.D. at 87.  "The test or standard for meeting the Rule 23(a)(2) prerequisite is qualitative rather than quantitative; that is, there need be only a *single issue common* to all members of the class. Therefore, this requirement is easily met in most cases." Natchitoches Parish Hosp. Servs. Dist. v. Tyco Int'l., Ltd., 247 F.R.D. 253, 264 (D. Mass. 2008) (quoting 1 Newberg, NEWBERG ON CLASS ACTIONS, § 3.10) (emphasis added).

Mass.2010) ("Commonality is satisfied where the lawsuit challenges a systemwide practice or policy that affects all of the putative class members."); <u>George v. Nat'l Water Main Cleaning Co.</u>, 286 F.R.D. 168, 175 (D. Mass. 2012) ("[H]ere the allegations against the Corporate Defendants are that their wage policies facially violated state law, which requires little individual inquiry."); <u>see also</u> <u>Kirby v. Cullinet Software, Inc.</u>, 116 F.R.D. 303, 306 (D. Mass. 1987) (stating evidence of commonality need not be "exhaustive," but only "illustrative" (quoting <u>Berenson v. Fanueil Hall</u>, 100 F.R.D. 468, 470 (D. Mass. 1984)).

Here, all claims are based upon Defendants' offering of the promotional gift card voucher. The differences between the subclasses relate only to whether a class member redeemed said voucher for any amount of money or whether a class member did not redeem the voucher such that they did not access the funds.  Accordingly, the class claims satisfy the commonality element of Fed. R. Civ. P. 23(a)(2).

### 4.      The Requirements of Typicality Are Met Under Rule 23(a)(3).

Rule 23(a)(3) requires that a representative of plaintiff's claims be "typical" of those of other class members.[4]  The typicality requirement is satisfied when the class members' claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members, and . . . are based on the same legal theory." <u>Garcia-Rubiera v. Calderon</u>, 570 F.3d 443, 460 (1st Cir. 2009) (quoting <u>In re Am. Med. Sys., Inc.</u>, 75 F.3d 1069, 1082 (6th Cir. 1996); <u>see also</u> <u>Marisol A. v. Giuliani</u>, 126 F.3d 372 (2d Cir. 1997) (typicality requirement "is

---

[4] The commonality and typicality requirements of Rule 23(a) "tend to merge." <u>Gen.Tel. Co. of Southwest v. Falcon</u>, 457 U.S. 147, 157 n. l3 (1982).  The requirement of this subdivision of the rule, along with the adequacy of representation requirement set forth in subsection (a)(4), is designed to assure that the interests of unnamed class members will be protected adequately by the named class representative.  <u>See</u> e.g., <u>Id.</u>; <u>In re Screws Antitrust Litigation</u>, 91 F.R.D. 52, 56 (D. Mass. 1981) (highlighting requirement that class interests are adequately protected); <u>Prudential II</u>, 148 F.3d at 311; <u>Bogosian v. Gulf Oil Corp.</u>, 561 F.2d 434 (3d Cir. 1977); <u>Asbestos School Litig.</u>, 104 F.R.D. at 429-30.

satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability"). Notably, a "finding of typicality will generally not be precluded even if there are 'pronounced factual differences' where there is a strong similarity of legal theories." In re Carbon Black Antitrust Litig., 2005 WL 102966, *12 (D. Mass. Jan. 18, 2005) (quoting In re Linerboard Antitrust Litig., 203 F.R.D. 197, 207 (E.D. Pa. 2001)); see also, Hayworth v. Blondery Robinson & Co., 980 F.2d 912, 923 (3d Cir. 1992) ("Factual differences will not render a claim atypical if the claim arises from the same event or practice of course of conduct that gives rise to the claims of the class members, and it is based on the same legal theory.").[5]

For settlement purposes Plaintiff has met this requirement because her claims are typical of the claims of all members of the Settlement Class as Plaintiff made a qualifying promotional purchase, was entitled to a promotional gift card voucher, received a promotional gift card voucher, but did not redeem said promotional gift card.

Thus, Plaintiff's claims are "typical" with regard to the entire class. Further, this requirement is met by the proposed settlement class as Plaintiff seeks to allege that the claims allegedly all arise from a common course of conduct by Defendants.

Accordingly, Plaintiff submits that for the purpose of settlement, the typicality requirement for class certification is satisfied.

### 5. The Requirements of Adequacy Are Met Under Rule 23(a)(4).

The final requirement of Rule 23(a) is set forth in subsection (a)(4), which requires that "the representative parties will fairly and adequately protect the interests of the class." In the

---

[5] In other words, "[t]he 'typicality' requirement focuses less on the relative strengths of the named and unnamed plaintiffs' case than on the similarity of the legal and remedial theories behind their claims." In re Relafen Antitrust Litig., 231 F.R.D. 52, 69 (D. Mass. 2005) (quoting Jenkins v. Raymark Indus., 782 F.2d 468, 472 (5th Cir. 1986)); Weiss v. York Hosp., 745 F.2d 786, 809-10 (3d Cir. 1984).

First Circuit, "[t]he requirement of adequate representation is met [where] [1] the named plaintiffs' interests are not antagonistic with those of the rest of the class but rather involve the identical legal issue, and [2] the plaintiffs' attorneys are qualified to conduct the litigation." Bouchard v. Sec. of Health & Human Servs., No. Civ.A. 78-0632-F, 1982 WL 594675, at *7 (D. Mass. Jan. 11, 1982); see also Andrews v. Bechtel Power Co., 780 F.2d 124, 130 (1st Cir. 1985) (stating Rule 23(a)(4) requires "that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation"). These two components are designed to ensure that absentee class members' interests are fully pursued.

For settlement purposes adequacy is met in the instant action as plaintiff's attorneys, proposed Class Counsel, are experienced in complex litigation and have an established track record in consumer protection law and class actions. See, fn. 1, supra

In turn, the class representative has no interests that are antagonistic to the class and has demonstrated her allegiance to this litigation through her patience and participation in the settlement process on behalf of all of the putative class members.

Having demonstrated that each of the mandatory requirements of Rule 23(a) are satisfied here, Plaintiff now turns to consideration of the factors which, independently, justify class treatment for settlement purposes of this action under subdivision 23(b)(3) of the rule.

### 6.   The Predominance Requirements of Rule 23(b)(3) Are Met in the Settlement Context.

Plaintiff's proposed settlement class also meet the requirements of Rule 23(b)(3). Under 23(b)(3) a class action may be maintained if:

> The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to the findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the

controversy already begin by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

FED. R CIV. P. 23(b)(3).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U. S. at 623. Although Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of any individual issues.  Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 39 (1st Cir. 2003) (noting "courts have usually certified Rule 23(b)(3) classes even though individual issues were present"); In re Sugar Ind. Antitrust Litig., 73 F.R.D. 322, 344 (E.D. Pa. 1976).

The Court must find that "the group for which certification is sought seeks to remedy a common legal grievance." Hochschuler v. G.D. Searle & Co., 82 F.R.D. 339 (N.D. Ill. 1978); see also, In re TJX Cos. Retail Sec. Breach Litig., 246 F.R.D. 389, 398 (D. Mass. 2007) ("Need for individualized damages decisions does not ordinarily defeat predominance requirement for class certification where there are disputed common issues as to liability."); Dietrich, 192 F.R.D. at 119 (in determining whether common issues of fact predominate, "a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class").  Rule 23(b)(3) does not require that all questions of law or fact be common. See e.g., Smilow, 323 F.3d at 39 (1st Cir. 2003) (pointing out Rule 23(b)(3) "requires merely that common issues predominate"); In re Telectronics Pacing Systems, 172 F.R.D. 271, 287-88 (S.D. Ohio 1997). In this regard, courts generally focus on the liability issues and whether these issues are common to the class.  If so, particularly in the settlement context, common questions are held to predominate over individual questions. See, Id.

Plaintiff asserts that common questions of law and fact predominate.  All of Plaintiff's claims are alleged to arise out of common advertisements and promotional gift card voucher programs. According to Plaintiff, this presents common operative facts and common questions of law which predominate over any factual variations as they relate to individual putative class members.

These common questions of law and fact include, without limitation: (a) whether Defendants' promotional gift card promotion is proper under applicable federal and state laws; and (b) whether Defendants have violated applicable state laws by allegedly failing to provide adequate notice and information to Sleepy's customers regarding what are alleged to be the material limitations alleged to have been placed on the program; and (c) whether class members were damaged by Defendants' actions. These common questions of law and fact suffice in this settlement class to present a predominance of common issues for the purpose of settlement.

Plaintiff also asserts that superiority is likewise met in the settlement context because this settlement will resolve the pending lawsuit against Defendants in a single, consolidated proceeding which will obviate the need for multiple, parallel lawsuits.  Further, given the commonality of claims relating to the promotional gift card voucher programs, there would be little or no interest for each class member to proceed with their own case.  Finally, the plan for distribution of payments treats all class members equitably by providing payments based upon their statutory or actual damages.

Accordingly, strictly for the purposes of settlement, the Parties agree that any individual variations, type or magnitude of damage suffered by individual class members will not affect predominance, because each class member will recover either the actual amount of money they

23

did not receive because they failed to redeem their voucher or the statutory damages for those class members who were able to redeem and use their promotional gift cards.

Finally, resolution of this litigation by class settlement is superior to the individual adjudication of class members' claims for compensatory relief.  In particular, the settlement provides class members with an ability to obtain prompt, predictable and certain relief, whereas individualized litigation carries with it great uncertainty, risk and costs, and provides no guarantee that the allegedly injured parties will obtain necessary and timely relief at the conclusion of the litigation process.  Settlement also would relieve judicial burdens that would be caused by adjudication of the same issues in multiple trials, including trials in each of the potential lawsuits being settled herein.

Accordingly, strictly in the settlement posture in which the case now stands, the matter is appropriate and should be certified for settlement purposes.

### 7.    The Requirements for Certification Under M.G.L. c. 93A Have Been Met

The standards governing certification of a M.G.L. c. 93A class action require findings that: "the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated"; the class representative "adequately and fairly represents such other persons"; and the class representative brings "the action on behalf of himself and such other similarly injured and situated persons."  Aspinall v. Philip Morris Companies, Inc., 442 Mass. 381, 391(2004).

The Massachusetts Supreme Judical Court has held that the standard for class certification under M.G.L. c. 93A is less stringent than under Rule 23.  See e.g., Baldassari v. Pub. Fin. Trust, 369 Mass. 33, 40 (1975); and Fletcher v. Cape Cod Gas Co., 394 Mass. 595, 605 (1985).

This less stringent certification standard is so because M.G.L. c. 93A § 9(2) omits "[t]he predominance and superiority requirements [of Rule 23 which] introduce[s] a highly discretionary element" to the analysis." <u>Baldassari</u>, 369 Mass. at 40.

Furthermore, when making a certification determination under M.G.L. c. 93A, "...a judge must bear in mind that our consumer protection statute 'was designed to meet a pressing need for an effective private remedy' for consumers, and that 'traditional technicalities are not to be read into the statute in such a way as to impede the accomplishment of substantial justice." <u>Fletcher</u>, 394 Mass. at 605-606; <u>see</u> <u>also</u>, <u>Aspinall</u>, 442 Mass. at 391-92.

As stated above, the proposed Class meets all the requirements of Fed.R.Civ.P. 23(a), and further, Plaintiff has alleged that Defendants' promotional gift card program was an unfair or deceptive act (an alleged violation of the law) that has caused similar injury to numerous other persons similarly situated.

Accordingly, strictly for the purposes of settlement, the settlement class is appropriate and should be certified pursuant to M.G.L. c. 93A.

### C.     The Proposed Notice Provides Adequate Notice to the Class of the Settlement.

#### 1.     The Class Action Notice Satisfies Due Process.

The Parties propose that Defendants, through the Settlement Administrator, send, by first class mail, to each member of the Settlement Class, as defined in the Settlement Agreement, the Class Action Notice attached to the Settlement Agreement as <u>Exhibit A</u>. The Class Action Notice attached to the Settlement Agreement as <u>Exhibit A</u> and the Long Form Notice attached to the Settlement Agreement as <u>Exhibit B</u> will both be made available on the Settlement Website.

The Parties propose that the Notice be sent to all known and reasonably ascertainable class members based on Defendants' records.   This notice plan is consistent with class

certification notices approved by numerous state and federal courts, and is, under the circumstances of this case, the best notice practicable.  See e.g., Wright v. Linkus Enters., Inc., No. 2:07-cv-01347-MCE-CMK, 2009 WL 2365436, at *7-8 (E.D. Cal. July 29, 2009) (holding notice involving same mail procedures as here meets both Rule 23(e) requirement that "proposed settlement is fundamentally fair, adequate, and reasonable" and "Rule 23(c)(2)(B) requirement that the Court direct 'best notice that is practicable under the circumstances'") (quoting FED. R. CIV. P. 23(c)(2)(B), (e)); Davis v. Abercrombie & Fitch Co., No. 08 CV 01859(PKC)(AJP), 2009 WL 1542552, at *1-4 (S.D.N.Y. June 2, 2009) (approving issuance of notice to class using same method as applied here); In re M.L. Stern Overtime Litig., No. 07-CV-0118-BTM (JMA), 2009 WL 995864, at *6-7 (S.D. Cal. Apr. 13, 2009) (finding same mail procedure as applied here to be the "best notice practicable"); and Adams v. Inter-Con Security Sys., Inc.,  No. C-06-5428 MHP, 2007 WL 3225466, at *3-4 (N.D. Cal. Oct. 30, 2007) (finding that notice using same mail procedure as here "satisfies the notice requirements of Rule 23(e), and . . . all other legal and due process requirements").

### 2.      The Proposed Class Action Notice is Accurate, Informative and Easy to Understand.

Under Fed. R. Civ. P. 23(e), class members are entitled to notice of any proposed settlement before it is ultimately approved by the Court.  Under Rule 23(e) and the relevant due process considerations, adequate notice must be given to all absent class members and potential class members to enable them to make an intelligent choice as to whether they wish to opt-out of the settlement. See e.g., Weinberger v. Great Northern Nekoosa Corp., 925 F.2d 518, 523 (1st Cir. 1991) (stating "the court's power to approve or reject a settlement under Rule 23(e) enables the court to ensure fairness for the class members" (quoting 3B MOORE'S FEDERAL PRACTICE ¶

23.91 at 23-533 to 23-534)); Prudential II, 148 F.3d at 326-27; and Valentino v. Carter-Wallace, Inc., 97 F.3d 1227 (9th Cir. 1996).

Here, the proposed Notice provides information on the nature of the proposed settlement, the principal terms and provisions of the Settlement Agreement, the monetary and other relief the settlement will provide class members, the procedures and deadlines for opting-out of the settlement and submitting objections, the consequences of taking or foregoing the various options available to class members, and the date, time and place of the final settlement approval hearing.

Pursuant to FED. R. CIV. P. 23(h), the proposed class notice sets forth the maximum amount of attorneys' fees and costs which may be sought by present party plaintiffs and their counsel.

The Parties also agree that the Notice fulfills the requirement of neutrality in class notices.  See, 4 NEWBERG ON CLASS ACTIONS at § 8.39.  It summarizes the proceedings necessary to provide context for the Settlement Agreement and summarizes the terms and conditions of the settlement in an informative, coherent and easy-to-understand manner, all in compliance with the Manual for Complex Litigation's requirement that "the notice contain a clear, accurate description of the terms of the settlement."  MANUAL FOURTH at §21.312.

The Notice clearly states that the settlement does not constitute an admission of liability by Defendants, and it makes clear that the final settlement approval decision has yet to be made. Accordingly, the Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court.  See e.g., 4 NEWBERG ON CLASS ACTIONS at §§8.21, 8.39; MANUAL FOURTH at §§21.311-21.312.

### D.      Settlement Administrator

The estimated fees and costs for the Settlement Administrator are $55,000.    The Settlement Administrator's duties will include expenses relating to identifying the members of the proposed settlement subclasses, providing Notice, mailing settlement payments, hosting a settlement website, as well as any others expenses reasonably incurred. Plaintiff requests that the Court appoint KCC LLC to serve as the Settlement Administrator.

### E.      A Final Fairness Hearing Should be Scheduled.

The Court should schedule a final fairness hearing to determine that class certification is proper for settlement purposes and to approve the settlement.  The fairness hearing will provide a forum to explain, describe or challenge the terms and conditions of the class certification and settlement, including the fairness, adequacy and reasonableness of the settlement.  At that time, moreover, Class Counsel will present their application for their fees and expenses pursuant to Rule 23(h).

Accordingly, the Parties request that the Court schedule the final fairness hearing for no later than one hundred and twenty (120) days after the date of the entry of the preliminary approval Order at the United States District Court for the District of Massachusetts, Boston Division.

## V.      Conclusion

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an Order: (1) provisionally certifying the proposed settlement subclasses under Rule 23 of the Federal Rules of Civil Procedure with respect to the claims brought against Defendants; (2) granting preliminary approval of the class Settlement Agreement; (3) appointing Forrest, LaMothe, Mazow, McCullough, Yasi & Yasi, P.C. as Class Counsel; (4) directing distribution of the proposed Notice to all class members regarding settlement of the claims against Defendants on a

final and complete basis, in accordance with this Motion for Preliminary Approval; (5) approving KCC LLC as the Settlement Administrator; and (6) setting the final fairness hearing for a date no later than one hundred and twenty (120) days after the date of the entry of the Preliminary Approval Order.

Respectfully submitted,

Plaintiff,
By his attorneys,

/s/ *Kevin J. McCullough, Esq.*

Kevin J. McCullough, Esq.
BBO: 644480
John R. Yasi, Esq., Esq.
BBO: 556970
Michael C. Forrest, Esq.
BBO: 681401
Forrest, LaMothe, Mazow, McCullough,
Yasi & Yasi, P.C
2 Salem Green, Suite 2
Salem, MA 01970
Telephone: 617.231.7829

DATED:  July 23, 2018.