UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIANNA KHUN, on behalf of herself and all others similarly situated,<br><br>      Plaintiff<br><br>      v.<br><br>SLEEPY'S, LLC and CMC ACQUISITION CORPORATION, d/b/a CAPITOL MARKETING CONCEPTS, INC.,<br><br>      Defendants. | **Case No. 1:17-cv-10110** |

**UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**I.      PROPOSED CLASS FOR SETTLEMENT PURPOSES**

Pursuant to the Settlement Agreement, the Parties have stipulated, for settlement purposes only, to a Settlement Class which was preliminarily approved by the Court on July 26, 2018.

The claims subject to the Settlement Agreement include potential claims arising out of what Plaintiff alleged to be an unfair and deceptive promotional gift card promotion offered by the Defendants to Massachusetts customers.

Specifically, Plaintiff alleged violations of Massachusetts General Law chapter 93A, § 2; Massachusetts regulation 940 CMR 6.05 (retail adverting regulation); Massachusetts regulation 940 CMR 3.02 (Massachusetts false advertising regulation); Massachusetts regulation 940 CMR 3.05 (General Misrepresentations); Massachusetts regulation 940 CMR 3.16 (violation of consumer regulations); and 12 CFR 205.20 (Federal gift card regulation). Further, Khun alleged claims of breach of contract; negligent misrepresentation; fraud and deceit; and unjust enrichment. Defendants deny the alleged conduct constitutes the alleged violations but have reached a settlement to address Plaintiff's claims.

## II.    BACKGROUND

On November 7, 2016, Dianna Khun filed this putative class in the Suffolk County Superior Court, Massachusetts against Defendants, Sleepy's LLC ("Sleepy's") and CMC Acquisition Corporation d/b/a Capitol Marketing Concepts, Inc. ("Capitol") (collectively "Defendants") (Khun, Sleepy's and Capitol are collectively referred to herein as the "Parties").

On or about November 1, 2016, and pursuant to M.G.L. c. 93A, Khun served both Defendants with class-wide consumer protection demands.

Thereafter, on or about December 12, 2016, Plaintiff filed a First Amended Class Action Complaint and Demand for Jury Trial with added claims for purported violations of M.G.L. c. 93A.

On or about January 23, 2017, Defendant, Sleepy's LLC, removed this case to the United States District Court for the District of Massachusetts.  Thereafter, both Defendants filed their respective answers and affirmative defenses to Khun's First Amended Class Action Complaint on January 30, 2017.

On April 3, 2017, the Parties appeared for the Rule 16 and Rule 26 Joint Scheduling Conference and filed their associated statements.  Following the conference, the Parties agreed to and executed a joint motion for entry of protective order.

On June 16, 2017, the Parties appeared for a status conference.  At the conference, the Parties reported that they had reached an agreement to proceed to private mediation.

Thereafter, on September 27, 2017, the Parties engaged Eric D. Greene, Esq. of Resolutions, LLC and held a full-day private mediation session.  However, at the time of the mediation the Parties were not able to fully resolve the alleged claims.

On October 11, 2017, the Parties appeared for a further status conference and proposed an amended scheduling order.

2

Thereafter, on January 11, 2018, the Parties appeared for a further status conference and discussed the Parties' amended scheduling order. Said amended scheduling order was entered by this Court on January 11, 2018.

On March 26, 2018, the Parties appeared for a further status conference and reported to the Court that they had reached an agreement on general terms of a class-wide settlement consisting of people who made a qualifying promotional purchase during the class period at a Sleepy's retail location in Massachusetts, or an online purchase for a Massachusetts delivery. The Parties reported that there was a need for a brief confirmatory discovery process and requested a further status conference date.

Thereafter, on May 4, 2018, the parties appeared before this Court with confirmation of settlement.

The Court set the matter for hearing on June 20, 2018.

On or about June 20, 2018, the Parties appeared before the Honorable Dennis F. Saylor IV and presented the Motion for Preliminary Approval of Settlement to the Court, along with supporting documentation, including the Settlement Agreement and proposed Notice.

On or about July 26, 2018, the Court preliminarily approved the settlement. Starting on or about August 23, 2018, in accordance with the terms of the Settlement Agreement and the Court's Preliminary Approval Order, the Parties ensured the Settlement Administrator compiled and mailed the Notice packets to members of the Settlement Class. See, Affidavit of Claims Administrator, attached hereto as **Exhibit 1**. On or about August 23, 2018, 7,152 notices were mailed to the Class Members. Thereafter, on or about September 6, 2018, 1,637 corrected notices were mailed out to Class Members whose first name was incorrectly labeled on the first notice. Of all notices mailed, a total of 1,346 were returned as undeliverable. The Settlement

Administrator attempted to locate such Class Members by an electronic background search and re-mailed 296 undeliverable notices to Class Members.

The Settlement Administrator also published the long form Notice on a website administered by the Settlement Administrator.  See, **Exhibit 1**.  The website: (i) provides instructions on how to contact Class Counsel for assistance; (ii) contains copies of the Notices, the Settlement Agreement, the Unopposed Motion for Preliminary Approval, the Fee and Expense Application, and other pertinent documents; (iii) provides Settlement Class Members with the ability to provide and/or update their mailing addresses; and (iv) contains other information Defendants' Counsel and Class Counsel mutually agree is relevant for dissemination to Class Members regarding the proposed Settlement.

As of the filing of this motion, the Parties have not received any objection to the terms of the proposed settlement.  See, *Affidavit of David R. Relethford, Esq*., attached hereto as **Exhibit 2**.

## III.    SUMMARY OF SETTLEMENT TERMS

The Settlement Agreement defines the Settlement Class into two subclasses.  The first subclass ("Subclass A") consists of all persons who made a qualifying promotional purchase during the class period at a Sleepy's retail location located in Massachusetts, or an online purchase for a Massachusetts delivery, and were entitled to a promotional gift card to be provided by Sleepy's as part of their purchase, who were provided with a voucher, and who did redeem said voucher.  The second subclass ("Subclass B") consists of all persons who made a qualifying promotional purchase during the class period at a Sleepy's retail location located in Massachusetts, or an online purchase for a Massachusetts delivery, and were entitled to a promotional gift card to be provided by Sleepy's as part of their purchase, who were not provided with a voucher, but who did not redeem said voucher.

The Total Settlement Amount is a total sum not to exceed six hundred and fifty thousand dollars ($650,000.00) which includes the Common Fund, Attorney's Fees and Costs, Settlement Administration Expenses and the Service Award (the "Total Settlement Amount"). Defendants have agreed to split the Total Settlement Amount such that each Defendant is paying 50% of the Total Settlement Amount.

Specifically, the Settlement Agreement provides that, if approved, Subclass A shall receive $25.00 in statutory damages from the Defendants per promotional gift card voucher, and Subclass B shall receive from the Defendants the actual value of the promotional gift card voucher to which they were allegedly entitled.  The settlement does not require that individuals submit a consent to join or a claim form in order to recover the amounts described.  Instead, Defendants will issue checks to the Class Members as described in the Settlement Agreement.

| Class | Number of Promotional Gift Card Vouchers Issued | Settlement Relief per Promotional Gift Card Voucher | Total Settlement Relief |
|---|---|---|---|
| Subclass A | 5,283 | $25.00 | $132,075.00 |
| Subclass B | 1,870 | $110.33 | $206,325.00 |
| | | **Total:** | **$338,400.00** |

Defendants have further agreed to and will pay all costs associated with administration of the settlement including providing notice to Settlement Class Members and issuing settlement checks.

In addition, Defendants have agreed to make a one-time service payment to the named Plaintiff in an amount not to exceed $6,300.

Finally, as part of the Total Settlement Amount as defined in the Settlement Agreement, the Defendants have agreed to pay the court approved amount of attorneys' fees and costs to Class Counsel separate and apart from the class member settlement relief, in an amount not to exceed $250,000.00.

## IV.     FINAL CERTIFICATION OF SETTLEMENT IS APPROPRIATE

Final Approval of this Settlement spares the litigants the uncertainty, delay and expense of a trial, while simultaneously reducing the burden on judicial resources. Federal Rule 23(e) provides that the Court must approve any settlement of a class action. In a class action, the "court plays the important role of protector of the [absent members'] interests, in a sort of fiduciary capacity." In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 785 (3rd Cir. 1995) ("GM Trucks"). The ultimate determination whether a proposed class action settlement warrants approval resides in the Court's discretion. Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968).

As this court has recognized, "[u]nder Federal Rule of Civil Procedure 23(e)(2), a settlement must be "fair, reasonable, and adequate." Bezdek v. Vibram USA Inc., 79 F. Supp. 3d 324, 343 (D. Mass.), aff'd, 809 F.3d 78 (1st Cir. 2015), citing, Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund, 582 F.3d 30, 44 (1st Cir. 2009); and City P'ship Co. v. Atlantic Acquisition Ltd., 100 F.3d 1041, 1043 (1st Cir.1996) ("A district court can approve a class action settlement only if it is fair, adequate and reasonable.").

As such, the court's role in reviewing a class action settlement for final approval is as "a fiduciary for the absent class members, protecting them from an unjust or unfair settlement." Id. (internal citations omitted).

When considering a motion for final approval for a class settlement, the Court must conduct a comprehensive assessment of the settlement terms, the interests of class members, the interests of other third parties that might be affected, and the surrounding circumstances of the litigation. Duhaime v. John Hancock Mut. Life Ins. Co., 183 F.3d 1, 2, 7 (1st Cir.1999); see also In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 805 (3d Cir.1995) ("Rule 23(e) imposes on the trial judge the duty of protecting absentees, which is executed by the court's assuring that the settlement represents adequate compensation for the release of the class claims.")

Further, when making a determination as to the fairness of a settlement, the Court should "consider both the substantive terms of the settlement compared to the likely result of the trial and 'the negotiating process by which the settlement was reached.'" Bussie v. Allmerica Fin. Corp., 50 F. Supp. 2d 59, 72 (D. Mass. 1999) (internal citations omitted). Moreover, the "fairness determination is not based on a single inflexible litmus test but, instead, reflects its studied review of a wide variety of factors bearing on the central question of whether the settlement is reasonable in light of the uncertainty of litigation." Id.

Finally, the court must analyze whether the interests of the class are better served by settlement than by further litigation. See In re Relafen Antitrust Litigation, 360 F. Supp. 2d 166 (D. Mass. 2005); Williams v. First Nat'l Bank, 216 U.S. 582, 595 (1910) ("Compromises of disputed claims are favored by the courts.").

### A.  The Settlement is Fair, Reasonable and Adequate

A "strong initial presumption" of fairness arises where the parties can show that "the settlement was reached after arms-length negotiations, that the proponents' attorneys have experience in similar cases, that there has been sufficient discovery to enable counsel to act intelligently, and that the number of objectors or their relative interest is small." Rolland v.

Cellucci, 191 F.R.D. 3, 6 (D. Mass. 2000); see also, City P'ship Co. v. Atlantic Acquisition Ltd.

P'ship, 100 F. 3d 1041, 1043 (1st Cir. 1996).

Moreover, "there is no single test in the First Circuit for determining the fairness, reasonableness and adequacy of a proposed class action settlement." In re Relafen Antitrust Litig., 231 F.R.D. 52, 71-72 (D. Mass. 2005) (internal quotations omitted).

As a result, the courts of the First Circuit rely variously on a number of factors, the most common of which include: (1) the complexity, expense, and duration of litigation, if the agreement is denied; (2) the amount of the proposed settlement compared to the amount at issue; (3) reaction of the class to the settlement; (4) the stage of proceedings and the amount of discovery completed; (5) the plaintiffs' likelihood of success on the merits and recovering damages on their claims; (6) whether the agreement provides benefits which the plaintiffs could not achieve through protracted litigation; (7) good faith dealings and the absence of collusion; (8) the settlement's terms and conditions. See, e.g., Rolland v. Patrick, 562 F. Supp. 2d 176 (D. Mass. 2008); In re Relafen Antitrust Litig., 231 F.R.D. at 72; In re Lupron Mktg. & Sales Practices Litig., 228 F.R.D. 75, 93 (D. Mass. 2005); Celluci, 191 F.R.D. at 8-9; and M. Berenson Co. v. Faneuil Hall Marketplace, Inc., 671 F. Supp. 819, 822-833 (D. Mass. 1987).

In the case at bar, an examination of each of these factors demonstrates that the proposed settlement is fair, reasonable, and adequate to the members of the class, and should be preliminarily approved by the Court.

First, with respect to complexity, expense, and duration of litigation, it is clear that the prosecution of this case would be lengthy and expensive. "Class action litigation is inherently complex, and complexity makes litigation especially costly in terms of both time and money." § 13:52. Criteria Governing Final Approval—Complexity and Expected Expense Of Trial, 4

NEWBERG ON CLASS ACTIONS § 13:52 (5th ed.). While the judicial system always prefers settlement, it especially welcomes settlement in class suits. Id.

If this settlement is not approved, the Parties face an extended and costly battle first regarding conditional and class certification and then likely summary judgment on the merits of whether the Class Members are entitled to compensation for the promotional gift card promotion and, if so, the amount of said compensation.

In addition, the Parties will have to conduct expensive additional discovery, including numerous depositions, in preparation for trial; likely resulting in a lengthy and costly class action trial. Finally, if this case does not settle, despite the outcome on a dispositive motion or trial verdict, the case will likely take years to reach final resolution; generating enormous legal fees, including fees and costs related to the exhaustion of all appeals.

Second, with respect to the amount of the proposed settlement compared to the amount at issue, the Parties agree that the value of the settlement is fair and reasonable given the various challenges facing Plaintiff.

That is, if the 5,283 members of Subclass A were successful at trial, Class Members might expect to receive a maximum three times what is 100% of the value of the voucher for their promotional gift card. However, multiple damages would require a showing of bad faith on the part of Defendants. Further, Subclass A may only have recovered the delta between the total amount of the promotional gift card and the amounts the class used. This could have resulted in members of Subclass A not recovering any amounts. Further, if Class Members were successful on some of the claims but not on the Consumer Protection Act claims, Class members could only expect to receive a maximum of 100% of the value of their promotional gift card voucher or some

lesser portion thereof.  If the 5,283 members of Subclass A were unsuccessful at trial, they would receive nothing.

Similarly, if the 1,870 members of Subclass B were successful at trial, the maximum possible recovery would be three times 100% of the amount of the voucher for their promotional gift cards.  The average promotional gift card voucher amount is $110.33.  Also, if Class Members were successful on some of the claims but not on the Consumer Protection Act claims, Class members could only expect to receive a maximum of 100% of the value of their promotional gift card vouchers or some lesser portion thereof.   If the 1,870 members of Subclass B were unsuccessful at trial, they would receive nothing.

Accordingly, the compromise reached by the parties represents an excellent result for the Class Members as pursuant to the settlement they receive the full benefit of what they could have received should they have been successful at trial without the significant cost of time and energy associated with protracted litigation. Further, given the risk that Plaintiff and the putative class could have recovered nothing if this litigation were to proceed, the Parties agree that this settlement amount is entirely appropriate and very favorable to the Plaintiff and the class she represents.

Third, with respect to the reaction of the Class to the settlement terms, as of the date of the associated Motion for Final Approval, there have been no objections to the Settlement Agreement submitted by any Class Member. See, **Exhibit 2**.

The Parties submit that the lack of an objection from an individual or entity with standing to attack the reasonableness, fairness, and adequacy of the Settlement Agreement lends further support to their request for final approval of the Settlement Agreement and the entry of the accompanying [Proposed] Final Order and Judgment.

Fourth, with respect to the stage of proceedings and the amount of discovery completed, Class Counsel received all requested information determined necessary to aggregate class damages for all claims in the case, thus allowing them to assess the fairness of the settlement. Also, the Parties engaged in extensive discussions about the relevant facts and legal merits of the claims asserted in the case. These discussions focused on the practical and legal issues presented by this case, and the Parties contend that this settlement will resolve the risks which the Parties fully appreciate at this point in the litigation

Fifth, with respect to the Plaintiff's likelihood of success in obtaining class certification and in recovering on the merits of the case, Plaintiff recognized that class certification was an open legal question and that finding a reasonable compromise was in the Parties' best interest. Finally, Plaintiff recognized that surviving summary judgment, or avoiding a significant reduction in available damages, would have been a significant hurdle.

Sixth, with respect to whether the Settlement Agreement provides benefits which Plaintiff could not achieve through protracted litigation, the Settlement Agreement provides the benefit of a prompt and fair resolution to all claims in the First Amended Complaint, and the avoidance of delay of the Class Members' receiving their portion of the settlement amount.

Seventh, with respect to whether the Settlement Agreement was reached as the result of good faith dealings and the absence of collusion, there is no evidence that this is not the case. Both Plaintiff and Defendants are represented by experienced counsel in class action litigation, who have litigated class action cases aggressively and successfully on behalf of their respective clients. The settlement was negotiated on behalf of Plaintiff by a team of attorneys who have successfully represented numerous class representatives and putative classes in class actions, including other

11

court approved settlements.[1] The experience and reputation of counsel is paramount, and, as noted above, the Parties were represented by very experienced lawyers in this area of law. See, e.g., Cotton v. Hinton, 559 F.2d 1326 (5th Cir. 1977); In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions, 410 F.Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); Fisher Brothers v. Phelps Dodge Industries, Inc., 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight."). As above, this settlement was negotiated by experienced counsel to assure all Class Members maintained their rights under the applicable laws, and was not the product of collusive dealings, but, rather, was informed by the vigorous prosecution of the case by experienced and qualified counsel.

Finally, as stated above, continued litigation would be long, complex, expensive, and burden the court's docket.

For the reasons above, the Parties contend that the fairness of the proposed Settlement Agreement is evident because not only was the Settlement Agreement the result of protracted, good faith, arm's length negotiations between experienced and informed counsel on both sides, but the Settlement Agreement (and its material terms) were negotiated among counsel and upon Class Counsel's review of extensive records.

---

[1] See e.g., Baldassari, et al. v. Ciox Health, LLC, CA No. SUCV-2017-0925-BLS2 (Allowed May 31, 2018, Salinger, J.); Doe et al. v. The Medical Treatment Center of Revere, et al., CA No. SUCV-2014-3487A (Allowed May 15, 2018, Campo, J.); Chayet, et al. v. Liberty Mutual Ins. Co., CA No. SUCV-2016-03558-BLS1 (Allowed January 30, 2018, Kaplan, J.); Butler et al. v. Salisbury Five C's, Inc., et al., CA No. ESCV-1777-CV-1127C (Allowed April 17, 2018, Lu, J.); Topham et al. v. Roberts Towing, Inc. d/b/a Roberts Towing, CA No. SUCV-2017-0386-BLS1 (Allowed February 21, 2018, Kaplan, J.); Cabrera v. Progressive Direct Ins. Co., CA No. SUCV-2016-03716-BLS2 (Allowed February 14, 2018, Salinger, J.); Polanik et al. v. Boston Hill Donuts, LLC, et al., CA No. 1784CV00914-BLS2 (Allowed, September 28, 2017, Leibensperger, J.); Hyman et al. v. Metropolitan Property & Casualty Ins. Co., et al., CA No. SUCV-1684CV00488-BLS2 (Allowed, August 23, 2017, Sanders, J.); and Kappotis et al. v. Bertucci's, Inc. et al., CA No. SUCV-1584CV03821-BLS1 (Allowed, February 24, 2017, Kaplan, J.).

V.    **LEGAL ARGUMENT**

    A.    **Standard of Review and Procedures for Final Approval.**

Rule 23(e) of the Federal Rules of Civil Procedure provides the mechanism for settling a class action.

Both the Supreme Court of the United States and various Circuit Courts have recognized that the benefits of a proposed settlement can only be realized through the certification of a settlement class. See, e.g., Amchem, 521 U.S. at 591; In re Lupron Marketing and Sales Practices Litigation, 345 F. Supp. 2d 135, 137 (D. Mass. 2004) (citing MANUAL FOURTH); see also, Hanlon v. Chrysler Corp., 150 F.3d 1011 (9th Cir. 1998); and Prudential II, 148 F.3d at 283.

Specifically, the First Circuit has established that where there is a "common disputed issue," courts should "view the issue . . . in favor of class action status." Tardiff v. Knox County, 365 F.3d 1, 5 (1st Cir. 2004); see also In re New Motor Vehicles Canadian Export Antitrust Litigation, 522 F.3d 6, 23 (1st Cir. 2008) (noting "existence of a common disputed issue weighs in favor of class certification, not against it). This is also the case in other circuits. See, e.g., Eisenberg v. Gagnon, 766 F.2d 770 (3d Cir.1985) ("[t]he interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action"). Here, as set forth below, all the elements of Rule 23 are met with respect to the proposed settlement, which, accordingly, merits class certification.

    1.    The Elements of Rule 23(a) are Satisfied.

In order for a lawsuit to be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, a named plaintiff must establish each of the four threshold requirements of subsection (a) of the Rule, which provides:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R Civ. P. 23(a). See, e.g., Key v. Gillette Co., 782 F.2d 5, 7 (1st Cir. 1986) ("all four requirements of Rule 23(a) must be met in order for certification of a class to be proper"); Barnes v. American Tobacco Co., 161 F.3d 127 (3d Cir. 1998); Prudential II, 148 F.3d at 308-09. Here, all four elements are easily satisfied. Specifically, the proposed settlement consists of the following subclasses:

a.    **The Redeemed Voucher Subclass (Subclass A)**:

All persons who made a qualifying promotional purchase during the class period at a Sleepy's retail location located in Massachusetts, or an online purchase for a Massachusetts delivery, and were entitled to a promotional gift card to be provided by Sleepy's as part of their purchase, who were provided with a voucher, and who did redeem said voucher.

b.    **The Unredeemed Voucher Subclass (Subclass B)**:

All persons who made a qualifying promotional purchase during the class period at a Sleepy's retail location located in Massachusetts, or an online purchase for a Massachusetts delivery, and were entitled to a promotional gift card to be provided by Sleepy's as part of their purchase, who were not provided with a voucher, but who did not redeem said voucher.

2.    The Numerosity Requirement Under Rule 23(a)(1) Has Been Met.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Plaintiff is not required to come before the Court and detail, to the person, the exact size of the class or to demonstrate that joinder of all class members is impossible. "'Impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." Advertising Special. Nat. Ass'n v. Federal Trade Comm'n, 238 F.2d 108, 119 (1st Cir. 1956) (citing 3 MOORE'S FEDERAL PRACTICE 3423 (2d ed. 1948).;

14

see also Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp., 149 F.RD. 65, 73 (D.N.J. 1993) (stating that "[i]mpracticability does not mean impossibility" and "precise enumeration of the members of a class is not necessary"). Furthermore, "numbers alone" are not determinative of numerosity, but rather, "the facts and circumstances of each case are to be taken into account to determine numerosity under Rule 23(a)(1)." Andrews v. Bechtel Power Corp., 780 F.2d 124, 131-32 (1st Cir. 1985). Numerosity is achieved here because Subclass A consists of 5,283 members and Subclass B consists of 1,870 members.  Further, it is not practicable for all members of the putative class to be joined in this action given their varying geographic locations throughout Massachusetts.

    3.     The Commonality Requirement Under Rule 23(a)(2) Has Been Met.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." The commonality requirement is met if the plaintiff's grievances demonstrate "that there are common questions of law or fact in the case." So. States Police Benevolent Ass'n, Inc. v. First Choice Armor & Equip., Inc., 241 F.R.D. 85, 87 (D. Mass. 2007) (characterizing commonality requirement as a "low hurdle" that "can be met by even a single common legal or factual issue").[2]

Here, commonality is met insofar as the claims of the class representative and all Class Members are all predicated on the core common issue as to whether Defendants' promotional gift card promotion was operated in an unfair and/or deceptive manner and whether the promotion caused Plaintiff and the Class a recoverable damage. See e.g., Overka v. Am.

---

[2] Rather than requiring that all questions of law or fact be common, Rule 23 only requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3). Plaintiff is not required to show that all class members' claims are identical to each other as long as there are common questions at the heart of the case; "despite some factual differences between the members of the class, commonality can still exist for purposes of 23(a)(2)." In re Dehon, Inc., 298 B.R. 206, 214 (Bankr. D. Mass. 2003) (holding that because one "can reasonably infer that certain defenses of the individual members of the putative class to Dehon's subordination strategy will be available to every other member . . . . commonality is established").

Airlines, Inc., 265 F.R.D. 14, 18 (D. Mass.2010) ("Commonality is satisfied where the lawsuit

challenges a systemwide practice or policy that affects all of the putative class members.");

George v. Nat'l Water Main Cleaning Co., 286 F.R.D. 168, 175 (D. Mass. 2012) ( "[H]ere the

allegations against the Corporate Defendants are that their wage policies facially violated state

law, which requires little individual inquiry."); see also Kirby v. Cullinet Software, Inc., 116

F.R.D. 303, 306 (D. Mass. 1987) (stating evidence of commonality need not be "exhaustive," but

only "illustrative" (quoting Berenson v. Fanueil Hall, 100 F.R.D. 468, 470 (D. Mass. 1984)).

Here, the claims arise from the same common issue; whether Defendants' promotional

gift card promotion caused the Class Members financial loss.  The lawsuit alleged that

Defendants intentionally ran a promotional gift card promotion to entice consumers to make a

qualifying purchase and thereafter issued vouchers for promotional gift cards with unadvertised

conditions and limitations.  In a settlement context, this case is illustrative of a common issue

sufficient to meet the 23(a)(2) standard.

    4.    The Typicality Requirement Under Rule 23(a)(3) Has Been Met.

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of

other Class Members.[3]

The typicality requirement is satisfied when the Class Members' claims "arise[] from the

same event or practice or course of conduct that gives rise to the claims of other class members,

and . . . are based on the same legal theory." Garcia-Rubiera v. Calderon, 570 F.3d 443, 460 (1st

Cir. 2009) (quoting In re Am. Med. Sys., Inc., 75 F.3d 1069, 1082 (6th Cir. 1996); see also Marisol

---

[3] The commonality and typicality requirements of Rule 23(a) "tend to merge." Gen.Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 157 n. 13 (1982). The requirement of this subdivision of the rule, along with the adequacy of representation requirement set forth in subsection (a)(4), is designed to assure that the interests of unnamed class members will be protected adequately by the named class representative. See e.g., Id.; In re Screws Antitrust Litigation, 91 F.R.D. 52, 56 (D. Mass. 1981) (highlighting requirement that class interests be adequately protected); Prudential II, 148 F.3d at 311; Bogosian v. Gulf Oil Corp., 561 F.2d 434 (3d Cir. 1977); Asbestos School Litig., 104 F.R.D. at 429-30.

A. v. Giuliani, 126 F.3d 372 (2d Cir. 1997) (typicality requirement "is satisfied when each Class Member's claim arises from the same course of events, and each Class Member makes similar legal arguments to prove the defendant's liability").

Notably, a "finding of typicality will generally not be precluded even if there are 'pronounced factual differences' where there is a strong similarity of legal theories." In re Carbon Black Antitrust Litig., 2005 WL 102966, *12 (D. Mass. Jan. 18, 2005) (quoting In re Linerboard Antitrust Litig., 203 F.R.D. 197, 207 (E.D. Pa. 2001)); see also, Hayworth v. Blondery Robinson & Co., 980 F.2d 912, 923 (3d Cir. 1992) ("Factual differences will not render a claim atypical if the claim arises from the same event or practice of course of conduct that gives rise to the claims of the class members, and it is based on the same legal theory.").

Plaintiff has also met this requirement, since Plaintiff, like the Class Members, made a qualifying purchase which entitled her to a promotional gift card and, allegedly, was damaged in the same way as other Class Members.  Thus, Plaintiff's claims are "typical" with regard to the entire class and differ only as to the extent of the amount of damages sought. Further, this requirement is met by the proposed settlement class as Plaintiff alleges that the claims allegedly all arise from a common course of conduct by Defendants. Thus, for the purpose of settlement, Plaintiff contends that each class member would have to put on a case which would be essentially the same case as Plaintiff's case (hence, commonality) and that Plaintiff would put on the same case as all Class Members (hence, her claims are typical).

        5.    The Adequacy Requirement Under Rule 23(a)(4) Has Been Met.

The final requirement of Rule 23(a) is set forth in subsection (a)(4), which requires that "the representative parties will fairly and adequately protect the interests of the class." In the First Circuit, "[t]he requirement of adequate representation is met [where] [1] the named plaintiffs' interests are not antagonistic with those of the rest of the class but rather involve the identical legal

issue, and [2] the plaintiffs' attorneys are qualified to conduct the litigation." <u>Bouchard v. Sec. of Health & Human Servs.</u>, No. Civ.A. 78-0632-F, 1982 WL 594675, at *7 (D. Mass. Jan. 11, 1982); <u>see also</u> <u>Andrews v. Bechtel Power Co.</u>, 780 F.2d 124, 130 (1st Cir. 1985) (stating Rule 23(a)(4) requires "that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation"). These two components are designed to ensure that absentee class members' interests are fully pursued.

Adequacy is met here as Plaintiff's attorneys, proposed Class Counsel, are experienced in complex litigation and have an established track record in consumer protection law and class actions. <u>See</u>, fn. 1 <u>supra</u>. In turn, the class representative has no interests whatsoever antagonistic to the class and has demonstrated her allegiance to this litigation through her patience and participation in the settlement process on behalf of all of the Settlement Class Members.

Having demonstrated that each of the mandatory requirements of Rule 23(a) are satisfied here, Plaintiff now turns to consideration of the factors which, independently, justify class treatment of this action under subdivision 23(b)(3) of the rule.

      6.    <u>The Requirements of Rule 23(b)(3) Have Been Met</u>.

Plaintiff's proposed subclasses also meet the requirements of Rule 23(b)(3). Under 23(b)(3) a class action may be maintained if:

> The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

FED. R CIV. P. 23(b)(3).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U. S. at 623. Although Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of any individual issues. Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 39 (1st Cir. 2003) (noting "courts have usually certified Rule 23(b)(3) classes even though individual issues were present"); In re Sugar Ind. Antitrust Litig., 73 F.R.D. 322, 344 (E.D. Pa. 1976).

The Court must find that "the group for which certification is sought seeks to remedy a common legal grievance." Hochschuler v. G.D. Searle & Co., 82 F.R.D. 339 (N.D. Ill. 1978); see also, In re TJX Cos. Retail Sec. Breach Litig., 246 F.R.D. 389, 398 (D. Mass. 2007) ("Need for individualized damages decisions does not ordinarily defeat predominance requirement for class certification where there are disputed common issues as to liability."); Dietrich, 192 F.R.D. 119 (in determining whether common issues of fact predominate, "a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class"). Rule 23(b)(3) does not require that all questions of law or fact be common. See, e.g., Smilow, 323 F.3d at 39 (1st Cir. 2003) (pointing out Rule 23(b)(3) "requires merely that common issues predominate"); In re Telectronics Pacing Systems, 172 F.R.D. 271, 287-88 (S.D. Ohio 1997). In this regard, courts generally focus on the liability issues and whether these issues are common to the class. If so, particularly in the settlement context, common questions are held to predominate over individual questions. See, Id.

The Parties assert that common questions of law and fact predominate.

All of Plaintiff's claims arise out of a common promotional gift card promotion. According to Plaintiff, this presents common operative facts and common questions of law which predominate over any factual variations in the Class Members' individual claims and/or damages.

19

These common questions of law and fact include, without limitation: (a) whether Defendants' promotional gift card promotion is proper under applicable federal and state laws; and (b) whether Defendants have violated applicable federal and state laws by failing to honor all promotional gift card redemptions and/or terminating expired promotional gift cards; and (c) whether the class is entitled to damages and if so, the proper measure of the damages. These common questions of law and fact suffice in this settlement class to present a predominance of common issues for the purpose of settlement.

The Parties also assert that superiority is likewise met in the settlement context because this settlement will resolve the pending lawsuit against Defendants in a single, consolidated proceeding – obviating the need for multiple, parallel lawsuits and given the commonality of claims relating to standard policies, there would be little or no interest for each Class Member to proceed with their own case – indeed, the plan of distribution treats all Class Members equitably by providing payments based upon the type of promotional gift card and thereafter on amount of the promotional gift card.

Accordingly, strictly for the purposes of settlement, the Parties agree that there is no danger that individual variations, type or magnitude of damage suffered by individual Class Members will affect predominance, as the class representative has suffered the same type of damages – and seeks the same type of relief – as all members of the proposed class.

Finally, resolution of this litigation by class settlement is superior to the individual adjudication of Class Members' claims for compensatory relief. In particular, the settlement provides Class Members with an ability to obtain prompt, predictable and certain relief, whereas individualized litigation carries with it great uncertainty, risk and costs, and provides no guarantee that the allegedly injured parties will obtain necessary and timely relief at the conclusion of the

litigation process. Settlement also would relieve judicial burdens that would be caused by adjudication of the same issues in multiple trials, including trials in each of the lawsuits being settled herein.

Accordingly, strictly in the settlement posture in which the case now stands, the matter is appropriate and should be certified for settlement purposes.

## VI.   THE PARTIES COMPLIED WITH THE TERMS OF THE SETTLEMENT AGREEMENT

### A.  Negotiations and Confirmatory Discovery

Following extensive negotiations, including an attempted private mediation, the Defendants provided confirmatory discovery in the form of a list of all Settlement Class Members; the status of their promotional gift card voucher redemption; and the amount of the promotional gift card voucher.

After Plaintiff's counsel's verification of the confirmatory discovery provided by Defendants, the Parties executed the Settlement Agreement.  See, **Exhibit 2**.

### B.  Class Notice

The Notice was sent to all known and reasonably ascertainable Class Members based on Defendants' records.

This notice plan was consistent with class certification notices approved by numerous state and federal courts, and is, under the circumstances of this case, the best notice practicable.  See e.g., Wright v. Linkus Enters., Inc., No. 2:07-cv-01347-MCE-CMK, 2009 WL 2365436, at *7-8 (E.D. Cal. July 29, 2009) (holding notice involving same mail procedures as here meets both Rule 23(e) requirement that "proposed settlement is fundamentally fair, adequate, and reasonable" and "Rule 23(c)(2)(B) requirement that the Court direct 'best notice that is practicable under the circumstances'") (quoting FED. R. CIV. P. 23(c)(2)(B), (e)); Davis v. Abercrombie & Fitch Co.,

No. 08 CV 01859(PKC)(AJP), 2009 WL 1542552, at *1-4 (S.D.N.Y. June 2, 2009) (approving issuance of notice to class using same method as applied here); In re M.L. Stern Overtime Litig., No. 07-CV-0118-BTM (JMA), 2009 WL 995864, at *6-7 (S.D. Cal. Apr. 13, 2009) (finding same mail procedure as applied here to be the "best notice practicable"); and Adams v. Inter-Con Security Sys., Inc., No. C-06-5428 MHP, 2007 WL 3225466, at *3-4 (N.D. Cal. Oct. 30, 2007) (finding that notice using same mail procedure as here "satisfies the notice requirements of Rule 23(e), and . . . all other legal and due process requirements").

Additionally, the proposed Notice provided information on the nature of the proposed settlement, the principal terms and provisions of the Settlement Agreement, the monetary and other relief the settlement will provide Class Members, the procedures and deadlines for opting-out of the settlement and submitting objections, the consequences of taking or foregoing the various options available to Class Members, and the date, time and place of the final settlement approval hearing.

As stated above, starting on or about August 23, 2018, in accordance with the terms of the Settlement Agreement and the Court's Preliminary Approval Order, the Settlement Administrator compiled and mailed the Notice packets to members of the Settlement Class.  In sum, the Settlement Administrator caused 7,153 notices and 1,673 corrected notices to be mailed.  See, **Exhibit 1**.

Further, as of November 19, 2018, of all notices mailed 1,083 were returned as undeliverable; and subsequently, 1,083 were checked for an updated address.[4] See, **Exhibit 1**.

Thereafter 296  undeliverable notices were re-mailed. See, **Exhibit 1**.

---

[4] Of the 1,083 returned notices, four (4) of the returned notices were returned after the opt-out and objection deadline. Out of an abundance of caution, KCC was directed to research additional address information for these addresses, and after completing its research, KCC has notified the Parties it is re-distributing three (3) of the notices.

The Settlement administrator also published the long form Notice on a website administered by the Settlement Administrator.  The website: (i) provided instructions on how to contact Class Counsel for assistance; (ii) contained copies of the Notices, the Settlement Agreement, the Unopposed Motion for Preliminary Approval, the Fee and Expense Application, and other pertinent documents; (iii) provided Settlement Class Members with the ability to provide and/or update their mailing addresses; and (iv) contained other information Defendants' Counsel and Class Counsel mutually agree is relevant for dissemination to Class Members regarding the proposed Settlement.  See, **Exhibit 1**.

In accordance with the terms of the Preliminary Order and Notice requirements set forth in the Settlement Agreement, Notice to Class Members has been issued. The Parties have not received a single objection to the proposed Settlement Agreement. See Exhibit 2.

Accordingly, the distribution of the Notice complied with the requirements of Due Process and the standards of fairness, completeness, and neutrality required under the authority of the Court, the law of Massachusetts and the requirements of the Constitution of the United States.

**VII.   CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court grant final approval of the Settlement Agreement and enter the [Proposed] Final Order and Judgment attached hereto as **Exhibit 3**.

Plaintiff,
By her attorneys,


/s/ *Kevin J. McCullough, Esq.*


Kevin J. McCullough, Esq.
BBO: 644480
Michael C. Forrest, Esq.
BBO: 681401
Forrest, LaMothe, Mazow,
McCullough, Yasi & Yasi, P.C
2 Salem Green, Suite 2
Salem, MA 01970
Telephone: 617.231.7829


DATED:  November 21, 2018.

## CERTIFICATE OF SERVICE

Pursuant to Local Rules 5.2(b)(2) and 5.4 of the Local Rules of the United States District Court for the District of Massachusetts, I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent by first-class mail to those indicated as non-registered participants, if any, on November 21, 2018.


*/s/ Michael C. Forrest*
Michael C. Forrest, Esq.